IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JAQUAN TAYLOR,<br><br>    Defendant.<br>_____ / | No. CR 15-00205 WHA<br><br>**ORDER DENYING MOTION<br>TO SUPPRESS EVIDENCE** |

### INTRODUCTION

In this Section 922(g)(1) prosecution, defendant moves to suppress evidence obtained by police. For the reasons stated below, defendant's motion is **DENIED**.

### STATEMENT

After an evidentiary hearing, in which four witnesses testified, several exhibits were received into evidence, and a video of the incident was shown, this order finds as follows: On March 25, 2015, at approximately ten at night, three San Francisco police officers, Matthew Ortega, David O'Keeffe, and Ian Glynn, approached a group of six to ten African-American males on the sidewalk at the corner of Rey Street and Garrison Avenue in San Francisco. Two cars sat illegally parked next to the group, blocking the roadway forward. Some of the people held money in their hands while others rolled dice. It had every appearance of a craps game. The immediate area was well lit and several people were milling about on the street. The corner of Rey and Garrison is in the Towerside neighborhood of San Francisco. The funeral of a documented gang member had taken place nearby that day.

The officers approached in a civil and non-threatening manner. They displayed their police identification. Officer Ortega asked the group members what they were doing. One person responded that they were rolling dice, and that no one was on probation so the officers could not search them. Seconds after this remark, defendant Jaquan Taylor sprinted away from the group, running south along Rey Street, a segment not well lit. All three officers chased after him, yelling "stop," and ordered that defendant put his hands up. Officer Ortega caught up to defendant and tripped him. Defendant fell and Officer Ortega observed a black handgun fall from defendant's waistline and slide along the ground. (Defendant testified and casually admitted he had the gun.) The officers arrested defendant and took him into custody. At the police station, the officers examined the black handgun, which was loaded with ten rounds of ammunition and determined it had been stolen.

This order follows full briefing, an evidentiary hearing, and oral argument.

## ANALYSIS

"A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a police man yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure.

*California v. Hodari D.*, 499 U.S. 621, 626–27 (1991).

Based on this standard, this order finds that the police did not seize defendant until Officer Ortega physically tripped him. The seizure did not occur when the officers approached the group or when the officers yelled "stop" at defendant while he fled.

A police officer may seize a person if the officer had a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective reasonable inferences, form a basis for particularized suspicion."

2

*United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).

The Supreme Court has held that: "Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." The Supreme Court described the following scenario:

> When an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. And any refusal to cooperate does not furnish the minimal level of objective justification needed for a detention or seizure. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) (internal citations omitted). *Wardlow* went on to say:

> Respondent and amici also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity.

*Id.* at 125.

And, the Supreme Court has held that in determining whether the police had sufficient reasonable suspicion "we must consider the totality of the circumstances — the whole picture. . . . Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion." *United States v. Sokolow*, 490 U.S. 1, 8–9 (1989).

Here, considering the totality of the circumstances, this order finds that the officers had sufficient reasonable suspicion to seize defendant. *First*, defendant's sudden sprint away from the police suggested consciousness of guilt and that criminal activity was afoot. As stated above, the

3

1  Supreme Court has held that headlong flight is the "consummate act of evasion" and is certainly
2  suggestive of wrongdoing. Defendant's headlong flight, on its own, went a long way towards
3  providing the officers with sufficient reasonable suspicion.

4  *Second*, the officers approached the group playing dice in a civil and non-threatening
5  manner. The area was well lit, there were lots of people milling about the block, and there were
6  only three police officers present, who did not have their guns drawn as they approached. Any
7  police misconduct would have been observed by many witnesses. Thus, this order finds that
8  defendant's flight was unprovoked within the meaning of *Wardlow*.

9  *Third*, as the officers engaged with the group playing dice, one of the group members said
10 that no one in the group was on parole and thus the officers could not search them. Seconds after
11 that pronouncement, defendant took off running. Based on this sequence, and defendant's clear
12 reaction to the statement about searches and parole, the officers could have reasonably suspected
13 the flight demonstrated defendant's consciousness of possession of contraband.

14 *Fourth*, while this order does not go so far as to declare the Towerside neighborhood a
15 high crime area, the funeral of a documented gang member occurred nearby on the very day in
16 question. Thus, based on their training and experience, the officers could reasonably assume that
17 tensions were higher than they would be on a normal day and people out at night were more likely
18 than usual to be concealing weapons.

19 At oral argument, defendant contended that the officers lacked reasonable suspicion to
20 approach the group in the first place because a street dice game does not violate California
21 gambling laws. Officer Ortega testified that the impetus for the approach was that he believed the
22 group had been engaging in illegal gambling. The parties hotly debated whether the dice game at
23 issue actually violated California Penal Code Section 330. This order, however, assumes that
24 defendant merely observed a friendly and lawful game of dice and that circumstance did not add
25 to the level of reasonable suspicion the officers had when they eventually seized defendant after
26 he fled.

27 Officer Ortega also testified that he suspected defendant possessed a gun because he
28 observed a gun-like bulge in defendant's clothing as he chased him. This order, however, finds

4

this testimony unconvincing. Defendant had on a long shirt covered by a heavy long down or polyfill vest. Whatever bulge the officer saw would have been too uncertain to count. The lighting was too dark, defendant ran too far ahead, and the chase occurred at such a breakneck speed that this factor will not be credited. Despite this, as discussed above, other factors provided the officers with sufficient reasonable suspicion.

**CONCLUSION**

For the reasons stated herein, defendant's motion to suppress is **DENIED**. A status conference is hereby set for **AUGUST 11, 2015, AT TWO P.M.**, to set a trial schedule.

**IT IS SO ORDERED.**

Dated: July 21, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5